McIlvaine, J.
The plaintiff in error complains of the verdict and judgment below, for that the jury, in the assessment of the damages to the boat caused by fire, adopted the rule and measure which govern in cases of total loss.
If this were a mere question, whether the jury, upon the testimony in the case, were justified in finding that the disaster by fire, which overtook the vessel, resulted in an actual total loss, we would not disturb the verdict or judgment. And, on the other hand, the like might be said if *64 the jury had found that the loss was only partial. We think that the question whether the loss was total or partial, was, upon the testimony as it appears in the record, a proper one to be left to the jury under instructions from the court.
This brings us directly to consider the rules of insurance law, by which total and partial losses are distinguished.. Upon what principle is it to be determined, when a peril insured against overtakes a vessel, whether the loss sustained is total or partial? This question, upon the authorities, is, by no means, of easy solution. Indeed, it can be-answered only in general terms, and by the application of general rules. It is well settled, however, that a total loss may be either actual or constructive.
An actual total loss is where the vessel ceases to exist in specie; becomes a “mere congeries of planks,” incapable of being repaired; or where, by the peril-insured against, it is placed beyond the control of the insured and beyond his power of recovery.
A constructive total loss is where the vessel remains in specie, and is susceptible of repairs or recovery, but at an expense, according to the rule of the English common law,, exceeding its value when restored; or, according to the terms of this policy, where “the injury is equivalent to fifty per centum of the agreed value in the policy;” and where the insured abandons the vessel to the underwriter:1 in such cases the insured is entitled to indemnity as for a total loss.
An exception to the rule, requiring abandonment, is found in cases where the loss occurs in foreign ports or seas, where it is impracticable to repair. In such cases the master may sell the vessel for the benefit of all concerned; and the insured may claim as for a total loss by accounting to the insurer for the amount realized on the sale. There are other exceptions to the rule, but it is sufficient now to say, that we have found no case in which the doctrine of constructive total loss, without abandonment, has been ad *65 mitted, where the injured vessel remained in specie and was brought to its home port by the insured.
A well-marked distinction between an actual and a constructive total loss is, therefore, found in this: That in the former no abandonment is necessary, while in the latter it is essential, unless the case be brought within some exception to the rule requiring it.
A partial loss is where an injury results to the vessel from a peril insured against, but where the loss is neither actually or constructively total.
When the loss is total, the value of the vessel as estimated in the policy, constitutes the basis for the adjustment of damages. Where the loss is only partial and the vessel has been repaired, the cost of repairs, less one-third new for old material, is the measure of compensation.
In the view we have taken of this case, it is unnecessary to'determine the rule of damages in other cases of partial loss.
On the trial in the court below, the learned judge instructed the jury as follows :
“ But the question which has been contested as the main point in this case is, whether the amount of this loss is to be ascertained by the rules applying to what is denominated a total loss, or by the rules applying to a partial loss-
“A total loss may be actual or constructive. A constructive total loss is where the loss is not actually total, but is so great as to justify the insured in abandoning the subject of insurance or what remains of it to the insurers,, and claiming a total loss.
“ It is usual for insured parties in cases of loss, whether actually or only constructively total by abandonment, to surrender what remains of the boat to the underwriters.
“This is a convenient way of making certain what in many cases would otherwise be uncertain. The surrender by abandonment of the wreck or salvage is so convenient, and so generally adopted in such cases, that the question *66 •of an actual total loss without an abandoment arises comparatively seldom.
“In the present case there has been no abandonment or ■sale of the part saved from the boat, but it has been used in rebuilding a new boat or in repairing the old one, and one question, perhaps I ought to say the question for the jury to determine is, which of these two things has been done. Has a new boat been built or an old one repaired?
“ As there was no abandonment of the property saved, no mere constructive total loss can be claimed. But, if there was an actual total loss, the recovery may be as far as a total loss without any abandonment, crediting the expenses with the value of what was saved.”
"With the above instructions we find no fault; but afterward the following instruction was given, to wit:
“ Now, it is not necessary that I should detail the diffi■culties I have found in analyzing and comparing the authorities on this subject, or in the application of the principles of the decided cases to the evidence in the present case. I may, however, in general, remark that while I find no clecided case precisely like the present, in which the fact that the cost of repair would exceed the repaired value, has been held to entitle the insured to recover for a total loss without abandonment, it does appear to me that the principles of the decisions to which I have referred logically applied to the facts of this case, as the plaintiffs claim them to be, would make it a case of actual total loss. That is to ■say, if the jury should find that this steamboat did remain in specie, but was so badly damaged by fire, that to repair that damage would cost more than she would be worth when repaired, both as to the damage by fire and collision, the repairs of the damage by fire must be considered as impracticable, and the loss actually total without abandonment.”
Herein we think there is error. A loss not even con■strtíctively total is held to be actually total. In other words, a partial loss is held to be a total loss.'-
It may be, as a general rule, that the question, whether it *67 be practicable or impracticable to repair a vessel which has been injured, but which remains in specie, is to be-determined by ascertaining whether or not the value of the vessel when repaired will equal the cost of repairing. The •solution of that question, however, does not draw the line ¡between cases of actual total loss, and cases of partial loss; but it does distinguish, under the rule of the English law, between cases of partial loss and those which, by abandonment, become total by construction. As we understand the rule, no case of actual total loss can arise, if the vessel remain in specie; that is, if it remain a vessel susceptible of being repaired, at any cost.
It is claimed, however, by the defendants in error, that the defendant below was not prejudiced by the instruction complained of; because, 1. The question whether the vessel was in fact repaired, or a new and different boat built, was fairly submitted to the jury. 2. That the United States did not remain in specie. 8, The boat was not in fact repaired, or fit for repairs, but another boat was built. In ■answer, it is sufficient to say, that if the issues were not fairly submitted to the jury, this court is not authorized to look into the testimony to ascertain whether the weight of evidence was or was not in favor of the verdict. The de7 fendant was entitled to have the jury pass upon the issues under proper instructions from the court. It is true, the •question whether the boat had been repaired, or a new boat built, was left to the jury; but the court, in its subsequent instruction, made the question submitted immaterial. Suppose the jury had found that the boat remained in specie, and was in fact repaired, but at a cost greater than the value of the boat when repaired, still, under the instruction, it was a case of actual total loss. But counsel say, the boat did not remain in specie. That was a question of fact for the-jury; but even then, it was not, under the instruction, a controling question. Suppose the jury had found that the boat did in fact remain in specie, still, if the cost of repairing exceeded the value of the boat when repaired, the case, under the charge, was one of actual total loss. As *68 we understand the charge complained of, it was in effect this : That in all cases of injury to a boat from a peril insured against, whether the vessel remain in specie or not, or' whether it be in fact repaired or not, the loss is actually total, without abandonment, if the cost of repairing exceeds the value of the vessel when repaired. It follows, therefore, that the jury may have arrived at their verdict, and assessed damages upon the principle of total loss, notwithstanding they also found that the vessel, after the fire, remained in specie, and that it was in fact repaired by the assured.
If the vessel remained in specie, and the owners elected to repair and did in fact repair the same, they can not, in our opinion, prevent the application of the rule of one-third off new for old material, by showingthatthe cost of making the repairs was more than the value of the vessel when repaired.
It is also claimed by plaintiff in error, that an abandonment was necessary in this case upon another principle, to-wit, to transfer to the insurer the claim of the assured against the owners of the steamboat America, for negligence of the officers and crew of the latter boat, in causing the injury insured against; so that if the owners of the two boats should turn out to be the same persons,the cross actions might be litigated in this suit.
It is undoubtedly true that an underwriter, upon payment of indemnity for loss, is subrogated to the rights of the assured against a stranger whose negligence caused the injury, and that an abandonment operates as a transfer of such rights. It is conceded in this case, however, that the assured were also the owners of the America, hence there was no right of action in the assured subject to the operation of the above rule.
■ Assuming, however, that the insured were accountable for the acts and conduct of the officers and crew of the America, it would then follow, that if the conduct of the latter whereby the United States was injured, was negligent, merely, the insurer had no right to complain, for the reason *69 that mere negligence on the part of the insured does not affect the obligation of the insurer. Tf, however, the injury to the United States was caused by the willful wrong or fraudulent act of the officers and crew of the America, then such willful wrong or fraudulent act was available as matter of defense to an action on the policy, either with or without an abandoment to the insurer.

Judgment reversed.

Day, C.J., and Welch, White, and Rex, J.J., concurring.